IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

CINCINNATI INSURANCE COMPANY
as subrogee of KIMBER 123 HOLDINGS, LLC and
AMPLIFY LIFE, LLC d/b/a Amplify Children's
Academy and Dropzone
6200 South Gilmore Road
Fairfield, OH 45014

ELECTRONICALLY FILED
Dec 18 2019
U.S. DISTRICT COURT
Northern District of WV

      Plaintiff,

v.      Civil Action No.: **1:19-CV-224 (Kleeh)**

OETIKER, INC.,
601 Abbot Road
East Lansing, MI 48823

      Defendant.

## COMPLAINT

PLAINTIFF, Cincinnati Insurance Company as subrogee of Kimber 123 Holdings, LLC (hereinafter "Kimber") and Amplify Life, LLC, d/b/a Amplify Children's Academy and Dropzone (hereinafter "Amplify") states by way of Complaint against the Defendant, Oetiker, Inc., as follows:

## PARTIES

1. Cincinnati Insurance Company (hereinafter "Cincinnati") is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 6200 South Gilmore Road, Fairfield, Ohio 45014. At all material times, Cincinnati was authorized to issue policies of insurance in the State of West Virginia.

2. Upon information and belief, at all times material hereto, the Defendant, Oetiker, Inc. (hereinafter "Oetiker"), was and is a corporation organized and existing under the laws of

the State of Michigan, with its principal place of business at 6317 Euclid Street, Marlette, MI 48453 and a registered agent address of 601 Abbot Road, East Lansing, MI 48823. At all times material hereto, Oetiker engaged in the business, among other areas, of designing, manufacturing, marketing, selling and distributing clamps utilized in plumbing applications, including stainless steel PEX clamps and conducted business activities within the State of West Virginia.

## JURISDICTION AND VENUE

3. Jurisdiction in this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

4. Pursuant to 28 U.S.C. §1391(a), venue is proper within the Northern District of West Virginia, Clarksburg, because Monongalia County is the judicial county within which a substantial part of the events giving rise to Cincinnati's claims occurred.

## FACTUAL BACKGROUND

5. At all times relevant hereto, Cincinnati provided its insureds, Kimber and Amplify (hereinafter "Cincinnati's Insureds"), with insurance policies covering their properties (hereinafter "Policies").

6. Sometime in 2015, the construction of the building at 10000 Coombs Farm Road, Morgantown, West Virginia (hereinafter "the Property") was completed.

7. The building was owned by Cincinnati's insured, Kimber.

8. Cincinnati's insured, Amplify, was a tenant in the building operating a daycare center.

9. On or about December 27, 2017, a water loss occurred at the Property causing extensive damage to the Property and damage to the tenant, Amplify.

10. The December 27, 2017 water loss was caused by failure of an Oetiker stainless steel PEX clamp (hereinafter "Oetiker clamp") which was attached to a PEX tubing water supply line (hereinafter "PEX tubing").

11. The failure of the clamp caused the loss of a water tight seal between the PEX tubing and brass valve associated with the Oetiker clamp, causing substantial water leaking throughout the Property.

12. Following the December 27, 2017 water loss, it was determined that the Oetiker clamp failed due to chlorine induced stress corrosion cracking.

13. The water loss caused damages to the real and personal property of Cincinnati's insureds and loss of business income during the time they lost the use of the Property.

14. As a result of the water loss and resultant damages, Cincinnati made payments to or on behalf of Cincinnati's Insureds in the amount of $183,591.82 for losses and damages caused by the incident.

15. By virtue, and to the extent of its payments made to or on behalf of Cincinnati's Insureds, Cincinnati is now subrogated to its Insureds' rights against Oetiker.

**COUNT I – NEGLIGENCE**

16. Cincinnati hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein at length.

17. At all times herein mentioned, Oetiker owed to consumers and other foreseeable users, such as Cincinnati's Insureds, various duties to design, manufacture, assemble, test, inspect, market, sell and/or distribute its clamps and component parts, including, but not limited

to, the Oetiker clamp at issue, without defects and/or deficiencies, so as not to create a foreseeable risk of harm to persons or property, including the risk of serious water damage and property losses.

18.     Oetiker breached the above legal duties through the acts and omissions of its agents, servants, workmen and/or employees by:

    a. Designing, manufacturing, assembling, marketing, selling and/or distributing the Oetiker clamp in an unreasonably dangerous and defective condition, which caused the Oetiker clamp to fail during the normal course of its intended and foreseeable use;

    b. Failing to test or inspect the Oetiker clamp and its component parts so as to design, manufacture, assemble, market, sell and/or distribute them in accordance with the specifications and good and workmanlike standards applicable within the industry;

    c. Failing to test and/or inspect the Oetiker clamp and its component parts so as to discover their propensity to fail during their normal foreseeable and intended use;

    d. Failing to warn of the serious and foreseeable risk of harm to persons and property posed by said defects and/or deficiencies in the Oetiker clamp and its component parts;

    e. Failing to provide adequate instructions and/or information concerning the defect(s) and/or deficiency(ies) which caused the Oetiker clamp and its components to fail in the course of normal use; and

    f. Such other careless and negligent conduct, acts and/or omissions as may be revealed in discovery.

19. The water loss was the direct and proximate result of Oetiker's careless and negligent conduct, acts and/or omissions as averred above and resulted in damages in the amount $183,591.82.

20. Cincinnati's Insureds did not know, nor could they have known through the exercise of ordinary care, of the defects in the Oetiker clamp and its component parts.

21. As a result of the subject water loss and resultant damage, Cincinnati has made payments to or on behalf of its Insureds in accordance with the Policies. By virtue of the payments made, or to be made, to or on behalf of Cincinnati's Insureds and in accordance with the Policies of insurance, Cincinnati is subrogated to the rights of its Insureds as against Oetiker to the extent of these payments.

WHEREFORE, Cincinnati demands judgment in its favor and against Oetiker in the amount of $183,591.82, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

## COUNT II – STRICT LIABILITY

22. Cincinnati hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein at length.

23. The Oetiker clamp and its component parts were unreasonably dangerous, defective and unsafe for their ordinary, foreseeable and intended use by reasons of their propensity to fail during ordinary, foreseeable and intended use.

24. Oetiker designed, manufactured, assembled, marketed, sold and/or distributed the Oetiker clamp and its component parts in an unreasonably dangerous, defective and unsafe condition.

25. The sole and substantial cause of the water loss and the damages as averred above was the conduct, acts and/or omissions of Oetiker, acting by and through its servants, agents, employees, workmen, contractors and/or authorized representatives who:

   a. Designed, manufactured, assembled, marketed, sold and/or distributed the Oetiker clamp and its component parts in an unreasonably dangerous, defective and unsafe condition, which caused the Oetiker clamp and its component parts to fail during the normal course of their intended and foreseeable use;

   b. Designed, manufactured, assembled, marketed, sold and/or distributed a defective and unreasonably dangerous Oetiker clamp including its component parts;

   c. Failed to provide adequate instructions and/or information concerning the safe installation and use of the Oetiker clamp and its component parts and/or their propensity to fail in the course of normal use; and

   d. Designed, manufactured, assembled, marketed, sold and/or distributed a defective and unreasonably dangerous Oetiker clamp, including its component parts, which malfunctioned in the course of normal use.

   e. Failed to stop the distribution of the Oetiker clamp and its component parts once it knew, and/or should have known, that its product could fail and cause damage;

   f. Failed to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, engineering, manufacture, packaging, testing, inspection, marketing, distribution and/or sale of the Oetiker clamp and its component parts which may have caused the product to fail in the course of its normal and intended use;

      g. Failed to warn installers and/or distributors, either pre or post-sale, that the Oetiker clamp and its component parts were defective and could fail causing damages;

      h. Failed to warn Plaintiff's Insureds, either pre or post-sale, that the Oetiker clamp and its component parts were defective and could fail causing damages;

26. The Oetiker clamp and its component parts were used for the purpose and in the manner intended and/or expected by Oetiker.

27. As a direct and proximate result of the unsafe and reasonably dangerous and defective condition of the Oetiker clamp and its component parts, for which Oetiker is strictly liable, Cincinnati's Insureds sustained damages in the amount of $183,591.82.

28. As a result of the subject water loss and resultant damage, Cincinnati has made payments to or on behalf of its Insureds in accordance with the Policies. By virtue of the payments made or to be made to or on behalf of its Insureds and in accordance with the Policies of insurance, Cincinnati is subrogated to the rights of its Insureds as against Oetiker to the extent of these payments.

WHEREFORE, Cincinnati demands judgment in its favor and against Oetiker in the amount of $183,591.82, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

### COUNT III – BREACH OF WARRANTY

29. Cincinnati hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein at length.

30. At the time Oetiker designed, manufactured, assembled, marketed, sold and/or distributed the Oetiker clamp and its components, Oetiker knew that the Oetiker clamp would be

utilized in plumbing applications where the Oetiker clamp and its component parts would likely be exposed to various chemicals and elements including, but not limited to, chlorides.

31. Cincinnati's Insureds relied upon Oetiker's skill and judgment to supply the Oetiker clamp and its component parts that would be suitable for this purpose.

32. With the provision of the Oetiker clamp and its component parts to customers, including Cincinnati's Insureds, Oetiker warranted that the Oetiker clamp and its component parts were fit for their particular purpose.

33. Oetiker breached the aforesaid warranty insofar as the Oetiker clamp and its component parts were unsafe for their intended and foreseeable use, resulting in the water loss.

34. With the provision of the Oetiker clamp and its component parts to customers, including Cincinnati's Insureds, Oetiker warranted that the Oetiker clamp and its component parts were fit for their ordinary purpose of safe use.

35. Oetiker breached the aforesaid warranty insofar as the Oetiker clamp and its component parts were unsafe for their ordinary use, resulting in the water loss.

36. As a direct and proximate result of Oetiker's breach of warranty, Cincinnati's Insureds sustained damages in the amount of $183,591.82.

37. As a result of the subject water loss and resultant damage, Cincinnati has made payments to or on behalf of its Insureds in accordance with the Policies. By virtue of the payments made or to be made to or on behalf of Cincinnati's Insureds, and in accordance with the Policies of insurance, Cincinnati is subrogated to the rights of its Insureds as against Oetiker to the extent of these payments.

WHEREFORE, Cincinnati demands judgment in its favor and against Oetiker in the amount of $183,591.82, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

## JURY DEMAND

Cincinnati hereby demands a trial by jury as to all issues so triable.

                              CINCINNATI INSURANCE COMPANY
                              as subrogee of KIMBER 123 HOLDINGS, LLC and
                              AMPLIFY LIFE, LLC d/b/a Amplify Children's
                              Academy and Dropzone

                              By Counsel

/s/ Brian K. Cochran
Brian K. Cochran
West Virginia State Bar No. 10503
Brewster, Morhous, Cameron, Caruth,
Moore, Kersey & Stafford, PLLC
418 Bland Street
Post Office Box 529
Bluefield, West Virginia 24701
(304) 324-0304
(304) 327-9178 – Fax
bcochran@brewstermorhous.com
*Attorney for Plaintiff, The Cincinnati Insurance Company*